**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2880
_____

JINGSHUN LIN,
a/k/a Jinshun Lin;
TAI DONG ZHOU,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A089-922-708 & A089-922-709)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2012
Before:  SCIRICA, CHAGARES and GREENBERG, Circuit Judges

(Opinion filed April 19, 2012)
_____

OPINION
_____

PER CURIAM

Jingshun Lin and Tai Dong Zhou ("petitioners"), both citizens of China, seek review of a decision of the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the following reasons, we will deny their petition for review.

I.

Zhou entered the United States illegally in 1999, while Lin entered illegally in 2004. They met in the United States and were married in 2004. In 2008, Lin filed an application for asylum, withholding of removal, and protection under the CAT, in which she named her husband as a derivative applicant and alleged that she feared persecution by the Chinese government because she helped her North Korean cousin escape to South Korea through China. The application was transferred to an immigration court and petitioners were placed in removal proceedings on the basis that they were present in the United States without authorization – charges that they conceded. Zhou thereafter filed his own application for relief; his claims are predicated solely upon Lin's claims.

A hearing was held before an Immigration Judge ("IJ") at which Lin was the sole witness. She testified that she worked as a clerk at the Household Register Office of the Public Security Bureau at the When Chung police station for approximately 12 years. In December 2002, Lin's North Korean cousin entered China illegally and sought shelter with Lin's parents. Lin urged her mother to persuade her cousin to return to North Korea,

and attempted to persuade him herself, but he refused to return. In February 2003, Lin used the authority of her office to prepare a false Chinese identification card for her cousin, which he used to facilitate his escape to South Korea. At the hearing, Lin acknowledged that her conduct was illegal.

In November 2003, government officials became aware of Lin's actions and ordered her to serve 60 days in the Public Security Bureau's detention center.[1] Lin testified that, while detained, she was interrogated two or three times by Public Security Bureau officials, who slapped her in her face two or three times. She was also harassed by fellow detainees. When she was released, she was fired from her job and ordered to continue cooperating with the Public Security Bureau. She fled to the United States in April 2004.

In September 2007, Lin's sister was detained for 15 days based on accusations that she helped Lin depart China. Additionally, Public Security Bureau officials visited Lin's parents' home. As a result, Lin filed her application based on her fear of returning to China.

The IJ denied petitioners' applications finding, among other things, that Lin failed to testify credibly.[2] The IJ therefore ordered the petitioners removed to China. The BIA

---

[1] In her application, Lin contended that she was also expelled from the Communist Party, although she did not mention that fact at the hearing.

[2] Although Lin did not file her asylum application within one year of arriving in the United States, see 8 U.S.C. § 1158(a)(2)(B), the IJ concluded, "giving [Lin] the benefit of the doubt," that the events of 2007 constituted changed circumstances sufficient to justify

dismissed petitioners' appeal, concluding that (1) the IJ's adverse credibility finding was not clearly erroneous; (2) Lin could not establish that she was persecuted or had a well-founded fear of future persecution on account of her political opinion; (3) Zhou's claims for asylum and withholding of removal failed with Lin's claims; and (4) neither Lin nor Zhou established that they would more likely than not be tortured if returned to China. Petitioners filed a timely petition for review.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the facts upon which the BIA's decision rests for substantial evidence and exercise de novo review over the BIA's legal conclusions. Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). Under the substantial evidence standard, we will uphold the BIA's decision unless "any reasonable adjudicator would be compelled to conclude to the contrary." See 8 U.S.C. § 1252(b)(4)(B).

Petitioners first attack the IJ's adverse credibility finding, claiming that it is flawed in several respects. We need not address those arguments because we conclude that petitioners' claims fail, even assuming that Lin testified credibly.

To be eligible for asylum, an alien must establish past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, and that the protected ground is one of the central reasons for the persecution. See 8 U.S.C.

---

the late filing. (A.R. 15.) The BIA did not disturb that ruling.

4

§ 1158(b)(1)(B)(i); Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009).

Petitioners contend that, if returned to China, Lin would be persecuted on account of her political opinion, as she "clearly did not like the Chinese Government's policy [toward North Korean refugees]." (Pet'rs' Br. 25.) However, nothing in the record establishes that she held any political opinion whatsoever concerning China's treatment of North Korean refugees. To the contrary, her testimony indicates that she acted out of concern for her cousin's welfare. (A.R. 260-61.) Furthermore, the record supports the BIA's conclusion that Lin was detained because she engaged in illegal conduct – in particular, abusing the authority of her office to obtain false documents for her cousin – as opposed to her politics.[3] See Li v. Att'y Gen., 633 F.3d 136, 137-38 (3d Cir. 2011) (denying petition for review given the lack of "any specific evidence concerning [alien's] political opinions" or evidence that the Chinese government would enforce a generally applicable law forbidding Chinese citizens from assisting illegal North Korean immigrants in a pretextual manner). As the record does not compel the conclusion that petitioners are

---

[3] Petitioners argue that Lin's detention was not a "legitimate prosecution" because she was not formally charged with a crime and never appeared in court. (Pet'rs' Br. 26.) However, the documentary evidence reflects that the Chinese government operates numerous administrative detention centers that function separately from the formal court system, which are apparently legal even if misused. (A.R. 361-63.) Regardless, even assuming that Lin's detention did not accord with proper procedures, she still has not established that it was centrally motivated by a political opinion she allegedly held as opposed to her illegal actions. In that respect, her case is easily distinguishable from Li v. Holder, 559 F.3d 1096, 1110-12 (9th Cir. 2009) (BIA's rejection of asylum claim was not supported by substantial evidence because the record reflected that the petitioner did not violate Chinese law by providing shelter to North Korean refugees).

entitled to asylum, they necessarily cannot meet the higher burden for establishing eligibility for withholding of removal. See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003).

Substantial evidence also supports the BIA's rejection of petitioners' CAT claims. Lin acknowledged that she was not tortured in the past on account of her actions and, although her documentary evidence reflects "harsh and degrading" prison conditions in China, (A.R. 360), it does not establish that she would likely be tortured upon return. Accordingly, the record does not compel a finding in her favor. See 8 C.F.R. § 1208.18(a) (defining torture, in relevant part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" exclusive of "lesser forms of cruel, inhuman or degrading treatment or punishment" and "pain or suffering arising only from, inherent in or incidental to lawful sanctions"); see also Kang v. Att'y Gen., 611 F.3d 157, 165 n.3 (3d Cir. 2010) ("Deplorable prison conditions do not, by themselves, constitute torture."). Likewise, nothing in the record suggests that Zhou would likely be tortured if returned to China.

For the foregoing reasons, we will deny the petition for review

6